2017 ND 250

Haruna Muntari GIWA, a.k.a. Harona Montari Giwa, Petitioner and Appellant

v.

STATE of North Dakota, Respondent and Appellee

No. 20170168

Supreme Court of North Dakota.

Filed 10/17/2017

Joseph L. Mrstik, Dickinson, ND, for petitioner and appellant.

Aaron W. Roseland, State's Attorney, Hettinger, ND for respondent and appellee.

Jensen, Justice.

[¶ 1] Haruna Muntari Giwa appeals a summary dismissal of his application for post-conviction relief based on a newly adopted rule of criminal procedure. We affirm the district court's order summarily dismissing Giwa's application for post-conviction relief.

I

[¶ 2] Giwa pleaded guilty to interference with a telephone during an emergency call,

and the district court entered the criminal judgment on November 17, 2015. Giwa is not a citizen or permanent resident of the United States. Giwa was paroled into the United States in November 2014. On February 11, 2016, the Department of Homeland Security ("DHS") terminated Giwa's parole status. According to Giwa's counsel, he has since been deported.

[¶ 3] As part of his guilty plea, Giwa signed an acknowledgment of rights, waiver of appearance, plea agreement, and plea on November 16, 2015. The acknowledgment of rights Giwa signed included that he understood he had the right to remain silent, right to counsel, right to a jury trial, and right to cross-examine witnesses and present evidence. However, the acknowledgment and plea documents did not include information about the possible immigration consequences if Giwa was not a United States citizen.

[¶ 4] On June 16, 2016, Giwa applied for post-conviction relief, arguing he was not advised of "the right to a jury trial, the right to cross-examine adverse witnesses, the right to be protected from compelled self-incrimination or to testify and present evidence." The State moved for summary disposition and dismissal. In September 2016, Giwa filed an affidavit repeating these allegations as part of his opposition to the State's motion for summary disposition and dismissal. Giwa also argued he was not informed of the potential immigration status consequences if he pleaded guilty to interference with a telephone during an emergency call. Further, Giwa contends he did not know DHS would terminate his parole and detain him due to pleading guilty to a crime. On March 14, 2017, the district court held a hearing on the State's motion for summary disposition.

[¶ 5] The district court denied Giwa's application for post-conviction relief and granted the State's motion for summary disposition under N.D.C.C. § 29–32.1–09. In granting the State's motion, the district court determined Giwa acknowledged his rights, including the waiver of his right to counsel. Additionally, the district court concluded the addition of N.D.R.Crim. P.11(b)(1)(j) did not apply retroactively, meaning neither the State nor the district court had an obligation to inform Giwa about the effect of a guilty plea on his immigration status.

II

[¶ 6] On appeal from the summary dismissal of an application for post-conviction relief, this Court "construes the application in the light most favorable to the applicant and accepts the well-pleaded allegations as true." *Greywind v. State*, 2015 ND 231, ¶ 7, 869 N.W.2d 746 (quoting *Wong v. State*, 2010 ND 219, ¶ 9, 790 N.W.2d 757). This Court "will affirm a dismissal for failure to state a claim if it would be impossible for the applicant to prove a claim for which relief can be granted." *Id.* A district court's findings of fact in post-conviction relief proceedings will not be disturbed unless they are clearly erroneous. *Greywind v. State*, 2004 ND 213, ¶ 5, 689 N.W.2d 390. Additionally, questions of law are fully reviewable. *Id.*

A

[¶ 7] Giwa argues this Court should apply N.D.R.Crim.P. 11(b)(1)(j) because "[a] significant change in substantive or procedural law has occurred which, in the interest of justice, should be applied retrospectively." N.D.C.C. § 29–32.1–01(1)(f). Giwa also argues the amendment to Rule 11 is a "'watershed' rule of criminal procedure whose non-application would seriously diminish the likelihood of an accurate conviction or which requires the observance of procedures that are implicit in the

concept of ordered liberty." *Clark v. State*, 2001 ND 9, ¶ 6, 621 N.W.2d 576 (citing *Teague v. Lane*, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)). In *Teague*, the United States Supreme Court noted these "watershed" rules of criminal procedure require the conviction "to have been fundamentally fair and conducted under those procedures essential to the substance of a full hearing." 489 U.S. at 311, 109 S.Ct. 1060.

[¶ 8] Currently, N.D.R.Crim.P. 11(b)(1)(j) requires the district court to inform defendants "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." This addition to Rule 11 became effective on March 1, 2016. N.D.R.Crim.P. 11, Explanatory Note. Giwa entered his plea on November 16, 2015, and the criminal judgment was entered on November 17, 2015. The subparagraph was added "to include a general statement that there may be immigration consequences of conviction in the advice provided to the defendant before the court accepts a plea of guilty or nolo contendere." *Id.* The Joint Procedure Committee notes the rule was "amended to expand the colloquy to require advising a defendant of possible immigration consequences when a judge accepts a guilty plea." *Minutes of the Joint Procedure Comm.* 23 (Jan. 29–30, 2015). The Joint Procedure Committee considered the addition of subparagraph (b)(1)(j) to match Fed. R. Crim. P. 11, which was amended in response to the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). *Memo to Joint Procedure Comm.* 302 (Sept. 11, 2014). Between N.D.R.Crim.P. 11 itself, the explanatory notes, and the committee meeting minutes, there is no indication that N.D.R.Crim.P.

11(b)(1)(j) was intended to apply retroactively.

[¶ 9] Prior to the amendment to Rule 11, this Court held deportation is a collateral consequence of a guilty plea, and the district court was not required to inform a defendant about immigration consequences before accepting a guilty plea. *State v. Abdullahi*, 2000 ND 39, ¶ 19, 607 N.W.2d 561. In comparison, the United States Supreme Court requires counsel to give his or her client notice of potential immigration consequences to a guilty plea or conviction, *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473. The court acknowledged the importance of protecting the finality of convictions while considering whether failing to inform a client about deportation consequences constituted ineffective assistance of counsel. *Id.* at 371, 130 S.Ct. 1473. The United States Supreme Court has also held that its rule requiring notification to clients about deportation consequences in *Padilla* does not apply retroactively. *Chaidez v. United States*, 568 U.S. 342, 358, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013).

[¶ 10] There is no indication that N.D.R.Crim.P. 11(b)(1)(j) was intended to apply retroactively. Giwa entered his guilty plea approximately four months prior to Rule 11(b)(1)(j)'s effective date. Further, the amendment to Rule 11 itself is not a "watershed" rule of criminal procedure that prevents manifest injustice. Failing to inform criminal defendants about the potential for immigration consequences does not bring into question the accuracy of convictions or violate "procedures that are implicit in the concept of ordered liberty." *Clark*, 2001 ND 9, ¶ 6, 621 N.W.2d 576. As noted above, this Court previously determined deportation was a collateral consequence to a guilty plea, and the United States Supreme Court determined its rule was not to be retroactively applied. No one aside from Giwa's own counsel,

which he waived his right to, was required to inform him of the potential deportation consequences of pleading guilty. Accordingly, the district court properly applied the effective rule at the time Giwa entered his guilty plea.

## B

[¶ 11] Giwa argues the district court failed to acknowledge his argument that his guilty plea was not knowingly, voluntarily, or intelligently made. Giwa contends he would not have pleaded guilty if he had been advised about the immigration consequences. Giwa provided no indication in his affidavit that he was forced, coerced, or otherwise under duress while he signed the plea agreement.

[¶ 12] "A guilty plea must be entered knowingly, intelligently, and voluntarily to be valid." *Sambursky v. State*, 2006 ND 223, ¶ 9, 723 N.W.2d 524. Further, this Court has determined, "[d]ue process is satisfied when the whole record clearly reflects the defendant's knowledge of the rights being waived.... A guilty plea is valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Greywind*, 2004 ND 213, ¶ 5, 689 N.W.2d 390 (citations omitted). In *Sambursky*, the defendant argued his guilty plea was not knowing and voluntary because the district court did not advise him about a consequence of his plea. *Sambursky*, at ¶ 8. This Court concluded the district court was not required to notify the defendant of that specific consequence, and the district court's failure to advise the defendant did not affect the voluntary or knowing nature of the plea. *Id.* at ¶¶ 10–11.

[¶ 13] Here, like in *Sambursky*, the district court was not required to notify Giwa of a consequence of his plea. Giwa only raised an issue with his plea in relation to his knowledge about the deportation consequences. The district court was not re-

quired to advise Giwa and its failure to do so did not affect the voluntary or knowing nature of the plea.

[¶ 14] Additionally, Giwa signed and acknowledged his rights and his plea, along with the factual basis for his guilty plea. Giwa argues there is a factual dispute about the voluntariness of the plea which the district court failed to acknowledge. The district court determined Giwa signed the acknowledgment of rights and waiver of his right to counsel in its memorandum opinion, noting the district court previously accepted that plea agreement in November 2015. Construing the evidence presented to the district court in the light most favorable to Giwa, the district court did not clearly err in concluding Giwa's plea was voluntary, intelligent, and knowing. Because N.D.R.Crim.P. 11(b)(1)(j) is not retroactive and the district court properly determined the plea was voluntary, knowing, and intelligent, summary disposition was appropriate.

## III

[¶ 15] We affirm the district court's order summarily dismissing Giwa's application for post-conviction relief.

[¶ 16] Jon J. Jensen

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Gerald W. VandeWalle, C.J.

McEvers, Justice, concurring specially.

[¶ 17] I concur with the result and have signed the majority opinion based on the arguments made by the Petitioner below. Mr. Giwa's arguments below were that N.D.R.Crim.P. 11(b)(1)(j) should be applied retrospectively and that his plea was not knowing and voluntary because he pleaded guilty without knowing what the consequences would be. I agree with the majority that N.D.R.Crim.P. 11(b)(1)(j)

should not be applied retrospectively. Majority at ¶ 10. I also agree with the majority that Mr. Giwa made no argument, nor did he provide any evidence in his affidavit that he was forced, coerced or otherwise under duress when he signed the plea agreement. Majority at ¶ 11. Mr. Giwa was given an opportunity to present evidence at the hearing and no further evidence was presented.

[¶ 18] However, I write separately to point out that had Mr. Giwa made an argument and presented evidence that his plea was forced, coerced or made under duress, the result here may have been different. Reviewing the plea agreement prepared by the State and signed by Mr. Giwa, there is no reference to the requirement under N.D.R.Crim.P. 11(b)(2), that the plea was voluntary and did not result from force, threats or promises other than the plea agreement. N.D.R.Crim.P. 11(b), requires the defendant to personally appear to enter a plea, unless the defendant's presence is not required under N.D.R.Crim.P. 43. The Explanatory Note to N.D.R.Crim.P. 11 states: "In a non-felony case, if the defendant wants to plead guilty without appearing in court, a written form must be used which advises the defendant of his or her constitutional rights and creates a record showing that the plea was made voluntarily, knowingly, and understandingly." The Explanatory Note also references a form which provides the appropriate language for such a plea agreement. The State, as the drafter of the plea agreement, should be careful to adhere to the requirements of both N.D.R.Crim.P. 11(b) and N.D.R.Crim.P. 43, particularly when a criminal defendant is not represented.

[¶ 19] Lisa Fair McEvers